UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO. 15-6499 |
| VIG II, LLC, ET AL | SECTION "R" (3) |

# ORDER AND REASONS

In this insurance coverage dispute, Atain Specialty Insurance Company moves for summary judgment on the grounds that it has no duty to defend or indemnify VIG II, LLC or Seth Hawley for claims brought by Gregory and Jennifer Zoglio.[1] Because all of the damages claimed in the Zoglios' complaint fall unambiguously within the "Damage To Your Product" exclusion in VIG II's insurance policy contracts, Atain's motion is GRANTED.

## I. BACKGROUND

### A. The Zoglios' Claims

The following facts are derived largely from Gregory and Jennifer Zoglio's state court petition.[2] On June 2, 2014 the Zoglios purchased a home

---

1 R. Doc. 29.
2 R. Doc. 29-4.

located at 501 Emerald Street, New Orleans, Louisiana from VIG, II LLC for $1.2 million.[3] VIG II, LLC, which is owned and operated by Seth Hawley, designed and built the home.[4] The Zoglios were the home's first occupants.[5] After moving into their new home, the Zoglios discovered several defects in the construction of the home.[6] These defects included:

> a. infiltration of water through windows; b. moisture damage to walls; c. staining and bubbling of window casings; d. migration of water to floor levels; e. water trapped behind walls and interior finishes; f. water infiltration below entry stairway; g. warping of kitchen cabinetry and failure of kitchen tile and woodworking; h. buckling of flooring; i. wet sheetrock and insulation; j. electrical problems, including failing outlets and lighting fixtures; and k. water damage to baseboards.[7]

The Zoglios assert that "significant water intrusion and related interior damage to the home was caused by [VIG II's] use of defective materials, and/or defective construction, design and/or installation and/or failure to follow the design of the home . . . ."[8] The Zoglios also alleged that these defects have caused mold and insect damage to their home, and that VIG II's

---

3 *Id*. at 2, 12, 13.
4 *Id*. at 2.
5 *Id*.
6 *Id*. at 3.
7 *Id*.
8 *Id*.

"failure to make necessary repairs has resulted in continued and ongoing deterioration of the condition of the home . . . ."[9]

In their petition, the Zoglios assert that "[p]ursuant to the provisions of the New Home Warranty Act" they are entitled to recover from VIG II "the cost of repairing the damage to the home and remedying the defects in the home" in addition to attorneys' fees and costs.[10] The Zoglios specifically list their damages as comprising:

> a. damage to the home; b. cost of repair and/or replacement necessary to cure the deficiencies within and associated with the home; c. diminution of value of the home; d. loss of enjoyment of the home, emotional distress, mental anguish, inconvenience and aggravation; e. fear for the health and safety of the petitioners and their family; f: attorney's fees; g. costs; and h. all other damages recoverable under Louisiana law and to be proven at trial.[11]

In addition to suing VIG II, the Zoglios filed a claim with their homeowner's insurance provider, Amica Mutual Insurance Company.[12] As of May 27, 2016, the Zoglios had received $107,851.30 from Amica pursuant to their claim.[13]

---

9 *Id.* at 4.
10 *Id.*
11 *Id.*
12 *Id.* at 23.
13 *Id.*

On December 22, 2014, after receiving notice from the Zoglios of the alleged defects, VIG II sued one of its subcontractors, Better Properties, LLC, along with Better Properties' owner and insurer, for damages related to the defects.[14] On December 4, 2015, Atain filed the present declaratory judgment action, seeking a declaration that it has no duty to defend or indemnify VIG II or Seth Hawley on the Zoglios' claims.

**B. VIG II's Insurance Agreements with Atain**

Atain is VIG II's Commercial General Liability (CGL) insurer. In this role, Atain issued three separate one-year policies to VIG II, which collectively provided coverage between September 12, 2012 and September 12, 2015. The policies describe the following coverage for "bodily injury and property damage liability":

> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.[15]

---

14 R. Doc. 3-1.

15 R. Doc. 29-5 at 39; R. Doc. 29-6 at 54; R. Doc. 29-7 at 46.

This provision, however, is subject to several limitations and exclusions. First, the coverage applies only if the property damage is "caused by an 'occurrence' that takes place in the 'coverage territory'" and the damage "occurs during the policy period."[16] Second, the "Exclusions" section outlines several types of claims that are not covered under the policies. The most relevant of these are the "Damage to Property," "Damage To Your Product," and "Damage To Your work" Exclusions. These exclusions are collectively referred to as the "Work Product" exclusion, *Martco*, 588 F.3d at 883, and state:

> 2. This insurance does not apply to:
>
> . . . .
>
> j. Damage to Property
>
> "Property damage" to:
>
> . . . .
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> . . . .
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."
>
> k. Damage To Your Product

16 *Id.*

> "Property damage" to "your product" arising out of it or any part of it.
>
> l. Damage To Your Work
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard"
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor. [17]

The policies' "coverage territory" includes the United States of America.[18]

The policies define "occurrence," "property damage," "your product," and "your work" as:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> . . .
>
> 17. "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> . . .
>
> 21. "Your product":

---

[17] R. Doc. 29-5 at 43; R. Doc. 29-6 at 58; R. Doc. 29-7 at 50.

[18] R. Doc. 29-5 at 51; R. Doc. 29-6 at 66; R. Doc. 29-7 at 58.

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You

. . .

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.[19]

Atain now moves for summary judgment, arguing primarily that the "Damage To Your Product" exclusion precludes coverage for all of the Zoglios claims against VIG II and Hawley, and that Atain therefore has no duty to defend or indemnify the claims.[20] The Zoglios, VIG II, and Amica, oppose Atain's motion and argue that some of the Zoglios' claims are not covered by the exclusion and that Atain's motion is premature.

---

19 R. Doc. 29-5 at 53; R. Doc. 29-6 at 68; R. Doc. 29-7 at 60.

20 R. Doc. 29.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

As noted, Atain contends that it has no duty to defend or indemnify VIG II and Hawley. An insurer's duty to defend an insured is "a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case." *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009) (citing *Elliot v. Cont'l Cas. Co.*, 949 So.2d 1247, 1250 (La. 2007)). The Court, therefore, will address each duty separately.

### A. Duty to Defend

An insurer's duty to defend suits against its insured is broader than its obligation to indemnify for damage claims. *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 51-52 (La. 2005); *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir. 2001). Under Louisiana law, an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. *See Martco*, 588 F.3d at 872. The insurer has a duty to defend unless the allegations "unambiguously preclude coverage." *Id.* (citing *Elliot*, 949 So.2d at 1250). The duty to defend "arises whenever the pleadings against the insured disclose a possibility of liability under the policy." *Id.* (citing *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987)); *see also Holzenthal v. Sewerage & Water Bd. of New Orleans*, 950

So.2d 55, 84 (La. App. 4 Cir. 2007) ("An insurer must provide a defense to an insured if, assuming all of the allegations to be true, there would be both coverage under the policy and liability to the plaintiff.") (citing *Am. Home Assur. Co. v. Czarniecki*, 230 So.2d 253 (La. 1969)). "The allegations . . . must be liberally interpreted in determining whether the claim falls within the scope of the insurer's duty to defend." *Hardy* 236 F.3d at 290 (citing *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993)). Here, the relevant pleadings for determining Atain's duty to defend is the Zoglios' state court petition.[21] The Court undertakes this analysis in two steps: first, the Court will determine whether "the complaint alleges a set of facts that would fall within coverage"; second, the Court will determine whether the insurer carries its burden of proving any policy exclusion applies. *Martco*, 588 F.3d at 873-75.

i. *Whether the complaint alleges a set of facts that would fall within coverage*

VIG II does not appear to dispute that the Zoglios have alleged property damage that falls within the policies' coverage. As noted, the property damage coverage applies only if the property damage is (1) "caused by an

21 R. Doc. 29-4.

'occurrence'"; (2) "that takes place in the 'coverage territory'" and (3) the damage "occurs during the policy period."[22]

The policies define "occurrence" as, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Louisiana courts interpret "occurrence" to include "an unforeseen and unexpected loss." *North Amer. Treat. Sys. v. Scottsdale Ins.*, 943 So.2d 429, 444 (La. App. 1 Cir. 2006); *see also Cunard Line Ltd. Co. v. Datrex, Inc.*, 26 So.3d 886, 890-91 (La. App. 3 Cir. 2009) (affirming trial court's determination that "the property damage caused by the defective work and/or defective products is an occurrence or accident which triggers coverage under the terms of the insurance policies"). Such a loss can arise out of faulty construction. *Iberia Parish Sch. Bd. v. Sandifer & Son Constr. Co.*, 721 So.2d 1021, 1023 (La. App. 3 Cir. 1999) ("If the roof leaks or the wall collapses, the resulting property damage triggers coverage under an 'occurrence' basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor.") (quoting 1 William S. McKenzie and H. Alston Johnson III, INSURANCE LAW AND PRACTICE § 183, 15 La. Civ. Law Treat.). Accordingly, the damage allegedly sustained by the Zoglios constitutes an "occurrence" under the policies. *See*

[22] R. Doc. 29-5 at 29; R. Doc. 29-6 at 54; R. Doc. 29-7 at 46.

*Rando v. Top Notch Props.*, 879 So.2d 821, 825-833 (La. App. 4 Cir. 2004) (reviewing Louisiana jurisprudence about what constitutes an "occurrence" and concluding that "the clear weight of authority in more recent cases considers defects in construction that result in damage subsequent to completion to be accidents and occurrences when they manifest themselves"); *Massey v. Parker*, 733 So.2d 74, 75 (La. App. 3 Cir. 1999) (defects in home construction constituted an occurrence).

The Zoglios' petition also satisfies the two remaining criteria. The Zoglios allege that they suffered damages within the United States of America.[23] And they allege that these damages were sustained after they purchased their home on June 2, 2014, which falls within the policies' combined coverage period of September 2012 to September 2015.

Because the petition alleges facts that would fall within coverage, the Court will determine whether Atain has carried its burden of proving that a policy exclusion applies to the arbitration claims. *See Martco*, 588 F.3d at 875.

*ii. Whether a policy exclusion precludes coverage.*

The insurer "bears the burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119,

---

23 R. Doc. 29-4 at 2.

124 (La. 2000). "A duty to defend will exist unless the allegations are such that every claim pleaded in the complaint (and otherwise falling within the insuring claim) unambiguously falls within an exclusion." *Martco*, 588 F.3d at 875 (citing *Alert Centre, Inc. v. Alarm Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992)). Any "ambiguity in an insurance policy is construed against the insurer." *Id.* (citing *Smith v. Matthews*, 611 So.2d 1377, 1379 (La. 1993)). Atain argues that only the Damage To Your Product exclusion applies to the Zoglios' claims, and expressly disclaims any reliance on the broader "work product" exclusion.[24]

Atain's rejection of the "work product" exclusion is puzzling in light of the Louisiana Supreme Court's decision in *Supreme Services and Specialty Co. v. Sonny Greer, Inc.*, 958 So.2d 634 (La. 2007). In that case, the court considered a CGL policy with exclusions nearly identical to those at issue here. The insured sought coverage for claims relating to faulty concrete slabs installed in connection with a building and a parking lot. *Id.* at 636. The court found that there was no coverage because the "work product" exclusion "eliminates coverage for the cost of repairing or replacing the insured's *own* defective work or defective product." *Id.* at 643 (emphasis added). The court relied on the "Damage to Property" exclusion which removes from coverage

---

24 R. Doc. 46 at 3.

"[t]hat particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." *Id.* at 639 (emphasis omitted). Further, the court found that the "work product" exclusion applied regardless of whether the work was performed by the insured contractor, or a subcontractor:

> [W]e find that AXA's CGL policy clearly excludes coverage for the damage to the property on which Greer [the insured], *and/or its subcontractor*, worked. Furthermore, the CGL policy excludes coverage to property (concrete slab) that must be repaired or replaced because the work performed by Greer, *or on its behalf*, was incorrectly performed.

*Id.* at 642 (emphasis added).

The Court noted that "your work" was, as here, defined as "those operations performed by . . . the contractor . . . and/or the subcontractors, who performed work on behalf of [the contractor]." *Id.* at 641. The exclusion applied because the work at issue—the concrete slabs—had to be repaired or replaced due to faulty workmanship performed by Greer, the contractor. *Id.* at 642.

In reaching this holding, the Louisiana Supreme Court emphasized that the standard "work product" exclusion "reflects the insurance company's intent to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship." *Id.* at 641. (internal quotations omitted). "A CGL policy," the

court explained, "is not written to guarantee the quality of the insured's work or product." *Id.*

Nonetheless, because Atain explicitly disclaims the benefit of the "work product" exclusion, the Court must determine whether the "Damage To Your Product" exclusion alone is broad enough to cover the Zoglio's claims. For the following reasons, the Court finds that it is.

The Damage To Your Product exclusion encompasses damage to the insured's product itself.[25] In *Supreme Services*, the Louisiana Supreme Court distinguished situations in which the insured's own product was damaged with situations in which there was "evidence of any injured third person or product as a result of the damaged property." *Supreme Servs.*, 958 So.2d at 642. In these latter instances, "[d]amage to real property arising out of the faulty work . . . would not be excluded as it would be covered under the [products-completed operations hazard (PCOH)] provision." *Id.* at 645. This is because "[u]nder the PCOH provision, damages, *other than the faulty product or work itself*, arising out of the faulty workmanship are covered by the policy." *Id.* (emphasis added). The court illustrated this distinction with an example from McKenzie and Johnson's Insurance Treatise:

---

[25] *See* R. Doc. 29-5 at 53 (excluding "'Property damage' to 'your product' arising out of it or any part of it."); *see also* R. Doc. 29-6 at 68 and R. Doc. 29-7 at 60 (same).

> Suppose an insured contracted to make and install a sign on a commercial building. After the work was completed, the sign fell due to defective installation, causing damage to the sign, the building's canopy, a parked car, and also bodily injury to a pedestrian. The insurer covering the products-completed operation hazard would cover all claims except the contractor's responsibility to repair and replace the sign, coverage for which would be excluded under the product and work exclusions.

*Supreme Servs.*, 958 So.2d at 644 (quoting McKenzie and Johnson, § 186 n.34). The policies at issues in this case, like the policy in *Supreme Services*, contain a PCOH provision.[26] Accordingly, to determine whether the Damage To Your Product exclusion precludes coverage here, the Court must determine: (1) what is VIG II's "product," and (2) whether the Zoglios allege damage to anything other than VIG II's product.

As to the first question, Atain maintains that the Zoglios' entire home is VIG II's product. This is supported by the Zoglios' petition, which describes VIG II as the home's "builder" and alleges that VIG II "designed and/or procured the design of the home and constructed the home."[27]

VIG II denies that the home is its "product." It further denies that it served as the general contractor on the Zoglios' home. VIG II admits that it "is a licensed contractor, pulled permits as the contractor and in many ways

---

26 R. Doc. 29-5 at 53; R. Doc. 29-6 at 68; R. Doc. 29-7 at 60.

27 R. Doc. 29-4 at 2.

acted as a general contractor" on the project in question.[28] VIG II, however, maintains that it is more accurately described as "a developer of the property" because it "was the owner of the property and did not contract with a third party to build the home."[29] VIG II maintains that this distinction precludes application of the Damage To Your Product exclusion.

The Court finds that VIG II's argument is precluded by the plain language of the policy contracts. It is undisputed that VIG II sold the home in question—the entire home—to the Zoglios for $1.2 million.[30] Under the policies, VIG II's "product" is "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [y]ou."[31] The home is plainly a "good or product" that was both "manufactured" and "sold" by VIG II. The Court therefore finds that the policies' Damage To Your Product provisions preclude indemnification for all damage to the Zoglios home. *See Provost v. Homes by Lawrence & Pauline, Inc.*, 103 So. 3d 1280, 1285 (La. App. 3 Cir. 2012) (holding that builder's "product" was the home and that work product exclusion therefore barred coverage for damages to the home itself).

---

28 R. Doc. 34-1 at 1.
29 *Id.*
30 R. Doc. 29-4 at 7.
31 R. Doc. 29-5 at 53; R. Doc. 29-6 at 68; R. Doc. 29-7 at 60.

Because the Zoglios' home is VIG II's product, and the policies exclude coverage for such products, Atain owes coverage only if the Zoglios' petition includes claims for damage to anything other than the home itself. Here, the policies and Zoglio's petition "unambiguously preclude coverage," *Martco*, 588 F.3d at 872, and Atain therefore has no duty to defend Zoglio's suit.

Every claimed defect and damage in the Zoglios' petition concerns the house itself. The Zoglios do not allege damage to any other property. Rather, the petition lists eleven "defects in the home."[32] It asserts that the Zoglios are entitled to "the cost of repairing the damage to the home and remedying the defects in the home."[33] The Zoglios specifically list their damages as comprising:

> a. damage to the home; b. cost of repair and/or replacement necessary to cure the deficiencies within and associated with the home; c. diminution of value of the home; d. loss of enjoyment of the home, emotional distress, mental anguish, inconvenience and aggravation; e. fear for the health and safety of the petitioners and their family; t: attorney's fees; g. costs; and h. all other damages recoverable under Louisiana law and to be proven at trial.[34]

32 R. Doc. 29-4 at 3.
33 *Id.*
34 *Id.*

This list—like the full petition—includes no tangible property other than the home itself, and the Zoglios claim therefore falls entirely within the Damage To Your Product exclusion.

To resist this conclusion, VIG II and the Zoglios point to a sworn declaration completed by Gregory Zoglio and attached to the Zoglios' opposition to Atain's motion for summary judgment.[35] In the declaration, Mr. Zoglio asserts that defects in the home's construction caused damage to window blinds and a floor rug.[36] Mr. Zoglio further asserts that he incurred costs associated with removing window shutters while repairs were conducted on the home, that grass on the side and rear of his home was damaged by repair equipment, and that he "anticipate[s]" similar damage to the landscaping in the front of his home to be caused by future repairs.[37]

Louisiana law is clear in prescribing the Court from considering this extraneous information. As noted, when evaluating Atain's duty to defend, the Court must only compare the allegations in the Zoglios' *complaint* to VIG II's policy. Louisiana's "Eight Corners Rule" precludes any more searching analysis. *See Martco*, 588 F.3d at 872 ("Under Louisiana's 'Eight Corners Rule,' we must assess whether there is a duty to defend by applying the

---

35 R. Doc. 33-1.
36 *Id.* at 2-3.
37 *Id.*

allegations of the complaint to the underlying policy without resort to extrinsic evidence.”); *La. Stadium & Exposition Dist. v. BFS Diversified Prods., LLC*, 49 So.3d 49, 51 (La. App. 4 Cir. 2010) (“The duty to defend is determined solely from the plaintiff’s pleadings and the face of the policy without consideration of extraneous evidence.”). The Court therefore finds that Gregory Zoglio’s declaration does not undermine the Court’s conclusion that summary judgment in favor of Atain is warranted on the issue of duty to defend.

A final concern is that the CGL policies’ definition of “Your Product” excludes real property.[38] “Under Louisiana law, ‘immovable property’ is real property.” *In re Hari Aum, LLC*, 714 F.3d 274, 283 n.7 (5th Cir. 2013); *see also* La. Stat. Ann. § 10:9-102 (defining “[r]eal property” as “immovable property and real rights therein . . . .”); 24 Diane Tooley–Knoblett & David Gruning, Louisiana Civil Law Treatise, Sales § 6:5 (2016) (“Louisiana, like other civil law systems, divides things into movables and immovables, categories that correspond generally to personal property and real property in common law jurisdictions.”). By Louisiana statute, “[t]racts of land, with

---

38 R. Doc. 29-5 at 53; R. Doc. 29-6 at 68; R. Doc. 29-7 at 60 (defining “your product” as “[a]ny goods or products, *other than real property*, manufactured, sold, handled, distributed or disposed of by . . . [y]ou” (emphasis added)).

their component parts, are immovables." La. Civ. Code art. 462. Buildings and "other constructions permanently attached to the ground" are component parts. La. Civ. Code. art. 463; *see also Lasyone v. Emerson*, 57 So. 2d 906, 909 (La. 1952) ("Under our law, buildings or other structures, being immovable by nature, become a part of the land."). Accordingly, because both the house and land that VIG II sold to the Zoglios are immovable under Louisiana law, they would seem to fall under the real property exception to the "Your Product" definition. Were this true, the Damage To Your Product section would not apply to preclude coverage.

Louisiana courts apparently do not treat products such as the Zoglios' home as real property for purposes of the Damage To Your Product exclusion. Rather, when an insured contracts to provide building services that result in the construction of what becomes an immovable—such as a home or a concrete slab—the Damage To Your Product exclusion still applies. *See Supreme Servs.*, 958 So.2d at 642 (concrete slabs were "product"); *Provost*, 103 So. 3d at 1285 (La. App. 3 Cir. 2012) (home was "product").

Because the Zoglios' home is VIG II's product, and the complaint evinces no claims for damage to anything other than the house itself, the Damage To Your Product exclusion unambiguously precludes coverage for

the Zoglios' claims. Atain therefore has no duty to defend VIG II against the Zoglios' allegations.

**B. Duty to Indemnify**

In determining an insurer's duty to indemnify, the Court is not limited to the allegations in the complaint, but rather "must apply the Policy to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case." *Martco*, 588 F.3d at 877; see *also Continental Holdings, Inc. v. Liberty Mutual Ins. Co.*, 443 Fed. Appx. 1, 2 (5th Cir. 2011) (in determining duty to indemnify, court should take factual inquiries beyond the complaint even if a final determination of liability is still pending). Although the interpretation of an insurance contract presents a question of law rather than of fact, the Court must apply the policy to the evidence presented to determine whether there is coverage under the insuring clause and whether a policy exclusion applies. *See Martco*, 588 F.3d at 878-84 (applying Louisiana law to determine whether "[a] review of the evidence adduced at trial, the resulting verdict and judgment, and the applicable Louisiana law reveals that [the insured] clearly carried its burden of establishing coverage under the insuring clause"). Accordingly, "Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature

and non-justiciable." *New England Ins. Co. v. Barnett*, 465 Fed. App'x. 302, 308 (5th Cir. 2011) (citing *Mossy Motors, Inc. v. Cameras Am.*, 898 So.2d 602, 607 (La. App. 4 Cir. 2005).

Atain urges the Court to nonetheless decide the issue of coverage before the state court determines liability. In doing so "it raises an exception, in which a reviewing court may decide the insurer's duty to indemnify before the conclusion of the underlying litigation if 'the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 669 (5th Cir. 2015) (quoting *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) and applying both Texas and Louisiana law because the court "discern[ed] no substantive differences in the relevant insurance laws of the two states.")); *see also Tower Nat. Ins. Co. v. Dixie Motors*, No. 14-1634, 2015 WL 2452336, at *2 (E.D. La. May 21, 2015).

The Court finds that, for the same reasons that Atain has no duty to defend the Zoglios suit, it need not indemnify VIG II for any resulting liability. The Zoglios suit concerns damages to their home, and the unambiguous terms of VIG II's CGL policies preclude indemnity for such claims.

## IV. CONCLUSION

For the foregoing reasons, Atain Specialty Insurance Company's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this __9th__ day of February, 2017.

_____________________

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE